UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HAROLD MITCHELL, by his Guardian Mary Louise Brown, ) ) | Civil Action No. 4:24-cv-6843-RMG-TER |
| Plaintiff, ) ) | |
| -vs- ) ) | **REPORT AND RECOMMENDATION** |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, KRISTEN GRAZIANO, WELLPATH, LLC, DONALD RHODES, MD., and JOHN DOES (1-8), ) ) ) ) ) ) | |
| Defendants. ) | |

**I.       INTRODUCTION**

This case arises from Plaintiff's detention within the Charleston County Detention Center. He alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment and brings this action pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendant Wellpath, LLC's Motion to Dismiss (ECF No. 28). Plaintiff filed a Response (ECF No. 29). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. This Report and Recommendation is entered for review by the District Judge.

**II.       DISCUSSION**

On November 11, 2024, Defendant Wellpath, LLC, together with other affiliated companies (collectively the "Debtors"), filed petitions under Chapter 11 of the United States Bankruptcy Code. The bankruptcy petitions were jointly administered under case number 24-

1

90533 (the Bankruptcy Case).

On November 22, 2024, without notice or knowledge of the pendency of the Bankruptcy Case, Plaintiff commenced the above-captioned action against the above-named Defendants.

On or about January 8, 2025, Plaintiff received notice of the Bankruptcy Case when Defendant caused a Suggestion of Bankruptcy and Notice of Stay to be filed in this case.

Because of the automatic stay of 11 U.S.C. § 362(a), and the extension by the Texas Bankruptcy Court of the automatic stay to all other defendants, the above-captioned action was stayed, and Plaintiff took no action to prosecute his claims.

On April 7, 2025, Plaintiff, through counsel, caused his proof of claim to be timely filed in the Bankruptcy Case.

Pursuant to the requirements of the Bankruptcy Code, the Debtors filed a proposed Chapter 11 plan which established certain "classes" of claimants, and provided for the treatment of claimants within each class. Plaintiff, as an unsecured creditor, was a member of "Class 6," which consisted of all general unsecured claims against the Debtors. See Case No. 24-90533, ECF No. 2596 at 94, B.6.

On April 15, 2025, Plaintiff, through counsel, filed his ballot voting against the Debtor's proposed Chapter 11 plan and opting out of certain third-party releases.

On May 1, 2025, the Texas Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates[1] and (II) Approving the Disclosure Statement on a Final Basis (Case No. 24-90533, ECF No. 2596) (hereinafter, Confirmation Order),

---

1 Hereinafter, the Confirmed Plan.

2

which is attached to Defendant's Motion as Exhibit A (ECF No. 28-1).

Upon entry of the Confirmation Order and confirmation of the plan, all claims and causes of action against Debtors, including those held by Plaintiff against Defendant, were discharged as to the Debtors. See ECF No. 28-1, Article IX.A. For this reason, Wellpath, LLC seeks dismissal of the claims against it.

However, to address the claims held by Plaintiff and other members of Class 6, the Confirmed Plan provided for the creation and funding of a channeling trust, and the appointment of a Liquidating Trustee to administer the same. Specifically, the Confirmed Plan provides that:

> [o]n the Effective Date, and without further action of any Person, the Liquidating Trust shall assume the liabilities, obligations, and responsibilities of the Debtors for all General Unsecured Claims as set forth in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall implement procedures in accordance with the Liquidating Trust Agreement to reach resolution of General Unsecured Claims and determine the Liquidating Trust's liability for such Claims.

ECF No. 28-1, Article IV.N.

The Confirmed Plan also provides with regard to Defendant's excess liability insurance policies:

> **Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts** hereunder. Unless otherwise provided in the Plan, on the Effective Date solely to the extent not provided in the Rejected Executory Contracts and Unexpired Leases Schedule, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) **such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Post-Restructuring Debtors.**
>
> **Nothing in this Plan**, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) **alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or**

3

> **third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors or draw on any collateral or security therefor.** For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims. **Any obligation of the Debtors or the Post Restructuring Debtors, as applicable, to satisfy any deductible, retention, or other financial obligation under any such insurance policy shall constitute a General Unsecured Claim under this Plan.**

ECF No. 28-1, Article V.E.

Therefore, upon confirmation of the plan and the creation of the Liquidated Trust, Defendant's direct obligations to its General Unsecured Creditors were discharged. Plaintiff's recovery against the Defendant is limited to its pro-rata share of the Liquidating Trust. Plaintiff cannot pursue any claims against the reorganized Debtors. See Confirmed Plan at N.2 ("Distributions in accordance with the Liquidating Trust Agreement and in accordance with the procedures contemplated therein shall be the sole source of recovery, if any, against the Debtors, their Estates, or the Post-Restructuring Debtors in respect of such General Unsecured Claims, and the Holders of such General Unsecured Claims shall have no other or further recourse to the Debtors, their Estates, or the Post-Restructuring Debtors.").

The Confirmed Plan and Plan Supplement, filed on April 29, 2025, provide for distribution procedures for claims asserted against the Liquidating Trust, as well as procedures for the Liquidating Trustee to evaluate claims filed against the bankruptcy estate (the "Claims Procedure"). See Case No. 24-90533 at ECF No. 2555 at 297-300. The Claims Procedure provides that, in the event of a dispute between the Liquidating Trustee and a claimant regarding the validity or amount of a claim, then:

> [if] Claimant opposes having the Bankruptcy Court determine the allowed amount

4

> for the claim, the Claimant may proceed in the appropriate civil court and litigate such claim with the Liquidating Trust included as a nominal defendant. In such instances, the Liquidating Trust's liability will be limited to Trust Distributions pursuant to these procedures and any judgment obtained against the Liquidating Trust would be used to determine Claimant's Allowed Claim Amount as provided for herein.

Id. at 299, paragraph J.

As of the date of Plaintiff's Response, Plaintiff has received no communications from the Liquidating Trustee regarding its claim. Plaintiff asserts that, given the sheer volume of claims against the Debtors, it will take the Liquidating Trustee several months, if not years, to process all of the potentially eligible claims. Plaintiff further asserts that, in the event that the Liquidating Trustee challenges the validity of Plaintiff's proof of claim, and if the parties are not able to reach an agreement regarding the amount of Plaintiff's claim, then Plaintiff has the right, under the provisions of the Confirmed Plan and Claims Procedure, to proceed in this court and litigate its claim with the Liquidating Trust as a nominal defendant.

Plaintiff argues that to prevent further prejudice to Plaintiff, which would occur if this action against Wellpath, LLC were dismissed and later refiled, Wellpath, LLC should be required to remain a named defendant, with the parties maintaining the status quo until such time as the Liquidating Trustee reviews its proof of claim. In the alternative, Plaintiff argues that the liquidating Trustee should be substituted for Wellpath, LLC as the defendant in this action until such times as the Liquidating Trustee reviews Plaintiff's claim.

Plaintiff also argues that in addition to Plaintiff's claims against the Liquidating Trust, pre-petition, Defendant Wellpath maintained several excess liability insurance policies to cover claims over and above its self-insured retention ("SIR") of $8,000,000.00 and, thus, Wellpath must remain captioned in this matter because, if Plaintiff obtains a verdict in excess of $8,000,000.00,

5

Wellpath's excess liability policies would be engaged and required to pay anything over and above $8,000,000.00.

On June 4, 2025, the Bankruptcy Court entered a General Form Order Regarding Lift Stay Motions. See Order Lifting Stays (ECF No. 28-2). Paragraph 4 of the Order Lifting Stays provides, in pertinent part, that

> **holders of personal injury tort and wrongful death claims may also seek determinations of the Debtors' liability by the appropriate civil court pursuant to 28 U.S.C. § 157(b)(5) with the Liquidating Trust as a nominal party (a) to the extent such inclusion is necessary to recover against available third-party insurance proceeds or an unreleased Non-Debtor Defendant, or (b) to establish or liquidate the amount of their claim for distribution under the Plan from the Liquidating Trust**; provided, however, outside of the Pro Rata distribution from the Liquidating Trust as well as recovery from any applicable insurance plan, the Holders of such claims may not seek satisfaction of, and are permanently enjoined from seeking payment of, any judgment, award, settlement, claim, distribution, indemnification right, or any other payment amount resulting from their lawsuit from, or in connection with, the Debtors, the Debtors' estates, or the Post-Restructuring Debtors.

Id.

A bankruptcy discharge typically "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Even still, placing aside certain inapplicable exceptions, the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

Based on these principles, federal courts have long recognized "that a tort victim may sue a debtor as a nominal defendant after the debtor is discharged from bankruptcy, as long as the suit is purposed solely to establish the debtor's liability in order to effect recovery from an insurer" or some other third party. Mauriello v. Great Am. E & S Ins. Co., 554 F. App'x 382, 384 (6th Cir.

6

2014) (collecting cases). That means "a personal injury action is not extinguished by the debtor's discharge – [only] the collection of debtor's personal liability for the debt is rendered unenforceable." In re Rodgers, 266 B.R. 834, 836 (Bankr. W.D. Tenn. 2001). Section 524(a)'s discharge injunction "is intended for the benefit of the debtor; it is not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required." Id. Although Wellpath might expend time and money defending this case, "[c]osts and expenses incurred by debtors in such situations ordinarily are insufficient reasons to prohibit a creditor ... from proceeding against a third party to recover on a cause of action." Id. at 837 (amending the injunction order to allow the creditor to proceed in its state court case against the debtor); see also In re Edgeworth, 993 F.2d 51, 53-54 (5th Cir. 1993) (holding that "allowing commencement or continuation of such actions [against debtor following a bankruptcy discharge] does not inequitably burden the debtor even though the debtor may spend time attending depositions and trial).

For these reasons, and in light of the Confirmed Plan and the Order Lifting Stays, it is appropriate to maintain Wellpath as a nominal defendant in this action for the sole purpose of determining its liability for Plaintiff's asserted injuries.[2] See Mauriello, 554 F. App'x at 384. In the event Plaintiff prevails and obtains a judgment against Wellpath, he may not commence post-judgment collection activities against Wellpath directly. See, e.g., Poronto v. Hoist, No. 24-CV-10522, 2025 WL 2700601, at *2 (E.D. Mich. Sept. 22, 2025) (adopting the same course of action in an action against Wellpath).

---

2  As discussed at the hearing held January 13, 2026, if Wellpath deems it necessary in light of the Bankruptcy discharge, it may file a motion seeking to limit its involvement in this action.

## III.  CONCLUSION

For the reasons discussed above, it is recommended that Wellpath's Motion to Dismiss (ECF No. 28) be denied.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

January 13, 2026<br>
Florence, South Carolina